IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SABAL TRAIL TRANSMISSION, LLC, *

    Plaintiff, *

vs. *

                                      CASE NO. 4:16-CV-102 (CDL)

REAL ESTATE and W. LYNN *
LASSETER,
                                 *

    Defendants.
                                     *

O R D E R

In this condemnation action, the jury returned a verdict in favor of the condemnee in the total amount of $107,916.50, including $103,385.00 for the value of easements taken by the condemnor. The condemnor maintains that the evidence presented at trial supported an award of no more than $19,979.00 for the value of those easements. The condemnor therefore filed a motion for judgment as a matter of law notwithstanding the jury verdict. Because the jury verdict is within the range supported by the evidence at trial, the condemnor's motion for judgment as a matter of law (ECF No. 118) is denied.

BACKGROUND

The Fifth Amendment to the United States Constitution prohibits the taking of private property for public use without "just compensation." U.S. Const. amend. V. Congress has authorized utility companies to construct pipelines to transport

natural gas across state lines, provided they obtain certificates of public convenience and necessity from the Federal Energy Regulatory Commission. *See generally* 15 U.S.C. § 717f. When a pipeline crosses private property, a natural gas company may obtain easements by eminent domain to facilitate the construction of the pipeline. 15 U.S.C. § 717f(h). But it must pay the landowners just compensation for the easements.

In this case, Plaintiff Sabal Trail Transmission, LLC constructed a pipeline from Tennessee to northern Florida through Alabama and Georgia. A portion of that pipeline crosses a 75-acre piece of property in Colquitt County, Georgia that is owned by Defendant W. Lynn Lasseter. The permanent easement for the pipeline is fifty feet wide and covers approximately 1.28 acres. The temporary construction easement, which expires on June 14, 2019, covers approximately 0.79 acres. Under the terms of the easement, Lasseter may not construct any permanent structures on the permanent easement, including buildings, walls or similar structures, swimming pools, decks, pipelines and conduits, septic systems, leach fields, and wells. Lasseter also may not plant trees on the permanent easement, and Sabal Trail has discretion to remove any structures or obstructions in or on the easement that might interfere with Sabal Trail's use of the easement. If Lasseter wishes to build a road or put utilities across the easement, he must get Sabal Trail's permission to do so.

Sabal Trail had the legal right to obtain an easement across Lasseter's property, and the pipeline construction has been completed. The only issue left for resolution at trial was the amount of "just compensation" that Sabal Trail must pay to Lasseter for this public taking of his private property. Sabal Trail argued at trial that the taking is restricted to the fair market value of the actual permanent and temporary easements plus the value of merchantable timber removed from the easements. Lasseter maintained that in addition to the fair market value of the property taken for the easements, he is entitled to a diminution in the value of his property that is adjacent to the permanent easement. He argued that the easement restricts his ability to develop that property and thus he should receive compensation for the diminution in value to the property due to this development restriction. Sabal Trail responded that the easement results in no diminution in value to any of the remainder property.

Sabal Trail relied on an appraiser named Carl Schultz to establish the fair market value of the property on which Sabal Trail's easements run. Schultz opined that the highest and best use of Lasseter's property as of the date of the taking was for residential development, and he determined that the property was worth $15,500.00 per acre. Trial Tr. vol. i 161:13-20, ECF No. 116. Schultz opined that the fair market value of the 1.28-acre

permanent easement before the taking was $19,840.00. *Id.* at 165:20-22. He further opined that the value of the permanent easement was eighty-five percent of the full fee simple value of the 1.28 acres, or $16,864.00. *Id.* at 164:25-166:2. As to the temporary construction easement, Schultz opined that just compensation would be $3,115.00. *Id.* at 166:3-20. Sabal Trail also called a timber value expert who opined that the value of the timber removed from Lasseter's property for the easements was $4,117.50. Trial Tr. vol. ii 110:16-111:1, ECF No. 117.

Schultz testified that he did not believe that the existence of the easement would have any detrimental impact on the remainder of Lasseter's property, so his valuation testimony did not include any diminution in value to the remainder. The easement restrictions that were admitted into evidence, however, clearly indicate that there are certain permanent prohibitions on what activity Lasseter is permitted to engage in on the easement. Trial Ex. D1, ECF No. 107-26; *accord* Trial Tr. vol. 1 165:4-12. For other activities that are not absolutely prohibited, Sabal Trail has full discretion to decide whether to allow such activities, including activities necessary for the development of a residential subdivision near the easement. *See* Trial Ex. D1.

Lasseter was unable to mount much of a fight at trial beyond his lawyer's cross examination of Sabal Trail's experts. Before trial, the Court excluded certain opinions of his valuation

4

expert because the methodology she used was flawed. The Court further prevented Lasseter from testifying as to fair market value issues because he was never properly disclosed as a witness who would testify as to those issues.

Sabal Trail's counsel moved for judgment as a matter of law at the close of all the evidence, maintaining that the only evidence of just compensation was presented by it and that the value was established as $16,864.00 for the permanent easement, $3,115.00 for the temporary easement and $4,117.50 for the timber. The Court reserved ruling on Sabal Trail's motion and allowed the case to be presented to the jury. The jury, apparently finding the evidence less clear than Sabal Trail's counsel made it out to be, returned a verdict for just compensation for the easements in the total amount of $103,385.00 and for the timber in the amount of $4,531.50. Sabal Trail renewed its motion for judgment as a matter of law.

DISCUSSION

Judgment as a matter of law is authorized "only if the evidence is so overwhelmingly in favor of [Sabal Trail] that a reasonable jury could not arrive at a contrary verdict." *Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 948 (11th Cir. 2018) (quoting *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001)). Thus, Sabal Trail is entitled to judgment as a matter of law only if no reasonable jury could

5

have found from the evidence presented at trial that just compensation for the easements and timber was anything other than $24,096.50. Sabal Trail cannot carry this high burden. A careful review of the evidence presented at trial reveals how a reasonable jury could reach the verdict returned here.

Sabal Trail argues that the only evidence at trial as to just compensation of the easements came from its expert who testified specifically that the value of the permanent and temporary easements was $19,979.00, with no diminution to the remainder of Lasseter's property. While Lasseter put up no valuation evidence during his case in chief, other evidence was presented to the jury during the trial on the diminution in the value of the remainder of Lasseter's property. And just as the jury was instructed that it may consider testimony from witnesses regardless of who may have called them and exhibits regardless of who may have tendered them, this Court may not ignore that evidence in deciding the present motion. That evidence includes the following.

Sabal Trail's expert testified that the pre-easement value of Lasseter's property was $15,500.00 per acre. Trial Tr. vol. i 161:13-20. He further opined that this value was based on the property's highest and best use, a residential subdivision. *Id.* at 147:18-21. The evidence further established that Lasseter had developed a subdivision just across the street from this property

which had finished lots available for sale. *E.g.*, Trial Tr. vol. ii 168:5-169:2, 185:13-17; Trial Ex. P33, ECF No. 107-14. Evidence was also elicited during cross examination that Lasseter intended to develop the property adjacent to the permanent easement as a residential development. Trial Tr. 178:9-179:16, 180:15-17, 188:8-190:21.

The easement terms were admitted into evidence, and those terms restrict what can be done on that easement. Trial Ex. D1. A reasonable juror could conclude that these restrictions would prevent activities that would be necessary to develop a portion of Lasseter's property for residential development. Specifically, exhibits were admitted that showed where the easement ran in relation to wetlands on the property, and a reasonable jury could conclude that due to the restrictions of the easement and its proximity to these wetlands, the property adjacent to the easement and near the wetlands could not be used for residential development. *E.g.,* Trial Ex. P32, ECF No. 107-13. Lasseter, the owner and potential developer of the property, testified that this part of the property was prime for the development of lots facing or backing up to the natural wetlands. Trial Tr. vol. ii 178:9-179:16, 188:8-190:21. Thus, it would be reasonable for a jury to find, contrary to the opinion of Sabal Trail's expert, that this part of the property is now not developable for residential purposes. The evidence was certainly

not so one-sided that no reasonable jury could reach that conclusion. Evidence was also introduced that this area is roughly six acres. *Id.*at 49:13-14. Using Sabal Trail's expert's own opinion as to fair market value of the property per acre, the jury's verdict is within the range of the evidence when the loss of value to this remainder property is combined with Sabal Trail's expert's value attributable to the actual easements. Accordingly, Sabal Trail is not entitled to judgment as a matter of law on the value of the easements.

The record as a whole also supports the jury's verdict regarding the value of the timber that was removed from the permanent and temporary easements. The jury returned a verdict for just compensation for the timber in the amount of $4,531.50. Sabal Trail maintains that evidence at trial does not support this verdict because its timber expert, Craig Ganas, opined that the timber removed from the easements was worth $4,117.50. Trial Tr. vol. ii 110:16-111:1. This is a difference of $414.00. It was undisputed that Ganas did not see the trees that were removed from the easements, or even the stumps. *Id.* at 114:21-115:16. Rather, he had to estimate the value of the trees based on the trees he saw on either side of the easements. *Id.* Ganas estimated that the merchantable value of the pine trees removed from the easement was $3,703.50 if used for saw timber, chip and saw, or pulpwood; his estimate did not include any pole timber,

which is the most valuable type of pine timber. Ganas further estimated that the hardwood trees removed from the easement were worth $414 if used for pulpwood, the lowest valuation for such trees. *Id.* at 110:16-111:1. Lasseter, who actually saw the trees before they were removed from the easements, testified about the characteristics of the trees that were removed from the easements. *Id.* at 149:5-150:4. Based on the record as a whole with reasonable inferences drawn in Lasseter's favor, the jury's verdict regarding the value of timber removed from the easements is supported by the evidence. Sabal Trail is not entitled to judgment as a matter of law on the value of the timber.

CONCLUSION

For the reasons set forth above, Sabal Trail's motion for judgment as a matter of law (ECF No. 118) is denied.[1]

IT IS SO ORDERED, this 5th day of October, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[1] The Court notes that neither party filed a motion for new trial, but if one had been sought, it would not have been granted. The verdict was not against the great weight of the evidence.

9